UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY JUNDY,

        Plaintiff,                                 Case No. 14-12524

                                                      Paul D. Borman
v.                                                United States District Judge

WELLS FARGO BANK, N.A.,

        Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT (ECF NO. 22) AND
DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF NO. 25)

      This is a mortgage foreclosure case. Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss and/or for Summary Judgment. (ECF No. 22.) Also before the Court is Plaintiff's Motion for Leave to Amend the Complaint. (ECF No. 25). Both matters have been fully briefed and the Court held a hearing on August 21, 2015. For the reasons that follow, the Court GRANTS Wells Fargo's Motion to Dismiss, and DENIES Plaintiff's Motion for Leave to Amend.

**INTRODUCTION**

      This is a mortgage foreclosure case. Plaintiff's home was sold at a sheriff's sale on December 10, 2013. The redemption period expired on June 10, 2014, just days after Plaintiff initiated this action in state court. Plaintiff thus lost all right, title and interest in his property and, absent a showing of fraud or irregularity in the foreclosure process that resulted in actual prejudice

1

to Plaintiff's ability to avoid losing his home, Plaintiff cannot set aside the foreclosure sale of his home.

On October 14, 2014, this Court entered an Order dismissing Counts II-XI of Plaintiff's original Complaint pursuant to the stipulation of the parties. The parties agreed at that time that Plaintiff would be permitted to file a motion for leave to file a single-count amended complaint for wrongful foreclosure under the guidance of his then-newly appointed counsel. Plaintiff filed his First Amended Complaint and Defendant now moves to dismiss Plaintiff's sole remaining wrongful foreclosure claim. Plaintiff opposes dismissal of the sole remaining Count of his First Amended Complaint and seeks leave to amend to file a Second Amended Complaint.

## I.     INTRODUCTION

### A.     Factual Background

On July 28, 2011, Plaintiff received a $199,803 residential mortgage loan ("the Loan") from Talmer Bank & Trust on property located at 38940 Holsworth Court, Farmington Hills, Michigan 48331 ("the Property"). A copy of the Mortgage securing the Loan was recorded with the Oakland County Register of Deeds on August 16, 2011. (ECF No. 22, Def.'s Mot. Ex. 1, Mortgage.) On August 3, 2012, the Mortgage was assigned to Defendant Wells Fargo. (Def.'s Mot. Ex. 2, Assignment of Mortgage.) The Assignment was recorded on August 3, 2012 with the Oakland County Register of Deeds. *Id.*

In January, 2013, Plaintiff experienced financial hardship and contacted Wells Fargo about a possible loan modification.[1] (Proposed Second Amended Complaint, ECF No. 25, Ex. 1 ¶ 22.)

---

[1] Plaintiff's First Amended Complaint contains no factual allegations at all regarding Plaintiff's financial hardship or his efforts at loan modification or reinstatement, all of which were alleged in detail in Plaintiff's original Complaint, and which are re-alleged in Plaintiff's proposed Second

2

Plaintiff alleges that from January 2013 through December 2013, he continued to submit documentation to Wells Fargo as requested for the purpose of reviewing him for a loan modification. *Id.* ¶¶ 22-23. Plaintiff further alleges that Wells Fargo continued to send letters, the last received on September 3, 2013, confirming receipt of Plaintiff's documentation and informing Plaintiff that his application was being reviewed and that the foreclosure sale of his Property would not take place while his loan was being reviewed. *Id.* ¶¶ 24-37. Despite the numerous letters from Wells Fargo informing Plaintiff that they had received his documentation, on December 3, 2013, Plaintiff received a letter from Wells Fargo stating that they had not heard from him or received necessary documentation and informing him that the foreclosure sale would take place on December 10, 2013. *Id.* ¶ 41.

On December 5, 2013, having learned that he was apparently no longer being considered for a loan modification, Plaintiff contacted Wells Fargo and Wells Fargo's designated reinstatement agent, Orlans & Associates, and requested a quote on the payment necessary to reinstate his loan. (Proposed Second Amended Compl. ¶ 44.) Defendant responded by sending Plaintiff a reinstatement quote on December 9, 2013, informing him that he could reinstate his loan by delivering a certified check to Orlans in the amount of $27,170.69, payable to Wells Fargo, by 5:00 p.m. on December 9, 2013. (*Id.* ¶ 45.) Plaintiff alleges that he personally appeared at the offices of Orlans on December 9, 2013 and tendered the payment of $27,170.69 but a representative of Orlans refused to accept the payment. (*Id.* ¶¶ 45-46.) Plaintiff then contacted Wells Fargo directly to attempt to make the reinstatement payment but was informed that the sale for the next day had

---

Amended Complaint. Because the Court must analyze the allegations of the Proposed Second Amended Complaint for purposes of determining futility, it includes those allegations here.

been scheduled and would not be adjourned. *Id*. ¶ 47. Plaintiff alleges that at the time the foreclosure sale occurred, he was in possession of the funds necessary to reinstate the loan and stop the sale but his tender of payment was refused. *Id*. ¶ 48.

### B.    Procedural Background

On October 14, 2014, Plaintiff, under the guidance of his then new counsel Mr. Kased, stipulated to dismiss all but one of the Counts of his original Complaint (which was drafted by his original and now withdrawn attorney) with the understanding that his new counsel would be permitted to file an Amended Complaint setting forth the factual allegations underlying the sole remaining Count for Wrongful Foreclosure. In accordance with the agreement placed on the record at the October 14, 2014 hearing on Defendant's original motion to dismiss Plaintiff's Eleven-Count Complaint, Plaintiff filed a Motion to for Leave to Amend on October 24, 2014, attaching his proposed First Amended Complaint. ECF No. 16, Motion to Amend. Defendant responded to the motion to amend on November 10, 2014, asking the Court to deny the motion for leave to amend on the grounds that the proposed new claim for wrongful foreclosure failed to state a claim upon which relief could be granted. ECF No. 17, Def.'s Response to Motion for Leave to Amend.

On January 30, 2015, this Court granted Plaintiff's motion for leave to file his First Amended Complaint without addressing the merits of the claims, recognizing the somewhat unusual posture of the case given the then-recent substitution of Mr. Kased as Plaintiff's attorney. ECF No. 18, Order Granting Motion to Amend. The Court acknowledged that Defendant would be able to test the First Amended Complaint with a motion to dismiss, to which Plaintiff would be permitted to respond rather than having to defend the claims of his First Amended Complaint in the context of a reply in support of his motion for leave to amend. *Id*. at 2. On February 19, 2015, Defendant did

file the motion to dismiss the First Amended Complaint that is presently before the Court.  ECF No. 22, Def.'s Mot. to Dismiss.

On March 11, 2015, Plaintiff filed his Response to Defendant's Motion to Dismiss (ECF No. 24) and also filed a motion for leave to file a Second Amended Complaint (ECF No. 25).   The proposed Second Amended Complaint continues to assert only one claim for Wrongful Foreclosure, but includes factual allegations in support of that claim that were set forth in Plaintiff's Original Complaint but omitted from Plaintiff's First Amended Complaint.  Defendant filed a Reply in support of its motion to dismiss (ECF No. 26) and has also filed a Response in Opposition to Plaintiff's motion for leave to file a second amended complaint, urging the Court to deny Plaintiff's request for leave to file a second amended complaint based upon futility (ECF No. 27).

## II.     STANDARD OF REVIEW

Defendants file this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) "and/or" Federal Rule of Procedure 56.  The Court determines that it need not consider matters outside the pleadings in ruling on the motion and therefore will treat the motion as one to dismiss pursuant to Rule 12(b)(6), which provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not  suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969). While a "*pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), still under even this lenient standard *pro se* plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The leniency granted to *pro se* plaintiffs "does not require a court to conjure allegations on a litigant's

6

behalf." *Id*. at 714 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III. ANALYSIS

### A. Plaintiff's Motion to Amend

The proposed Second Amended Complaint attempts to insert back into the case several allegations from the original Complaint that were omitted from the First Amended Complaint. Because, as discussed *infra*, the additional factual allegations of the proposed Second Amended Complaint do not plausibly suggest a claim for wrongful foreclosure, the Court DENIES Plaintiff's Motion for Leave to Amend based on futility. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (noting that "denying leave to amend is appropriate where the proposed

7

amendment would be futile"). A proposed amendment is futile if it could not withstand a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### B. Defendant's Motion to Dismiss Plaintiff's Wrongful Foreclosure Claim

"Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013). "While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed." *Id.* (internal reference and citations omitted). "The statutes provide the mortgagor six months after the sheriff's sale in which to redeem the property." *Id.* "Once this statutory redemption period lapses, however, the mortgagor's 'right, title, and interest in and to the property' are extinguished." *Id.* (quoting *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 4 N.W.2d 514, 517 (1942)).

Plaintiff's redemption period expired on June 10, 2014. Plaintiff filed this action in state court on June 6, 2014 and Wells Fargo removed to this Court on June 26, 2014. The filing of the lawsuit was insufficient to toll the statutory redemption period. *Bryan v. JPMorgan Chase Bank*, 304 Mich. App. 708, 714 (2014). *See also Conlin*, 714 F.3d at 360 (citing *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) ("[T]he filing of a lawsuit is insufficient to toll the redemption period."). Accordingly, Jundy's redemption period expired on June 10, 2014, notwithstanding the fact that he filed his Complaint four days before the redemption had expired.

In *Bryan*, the Michigan Court Appeals reaffirmed that "[i]f a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished."

8

*Bryan*, 304 Mich. App. at 713 (citing *Piotrowski*, 302 Mich. 179, 187 (1942)) (alteration added). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity. Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished." *Bryan*, 304 Mich. App. at 714 (internal quotation marks and citation omitted).[2]

"'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" *Conlin*, 714 F.3d at 359 (quoting *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 739 N.W.2d 656, 659 (2007)). "[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements." *Freeman v. Wozniak*, 241 Mich. App. 633, 637 (2000). "It is further clear that not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Conlin*, 714 F.3d at 360 (quoting *El–Seblani v.*

---

[2] The Michigan Court of Appeals in *Bryan* appears to have analyzed the post-redemption challenge as a standing issue, holding that a person who challenges a foreclosure outside the redemption period is stripped of all right, title and interest in the property and therefore lacks standing to sue: "We hold that by failing to redeem the property within the applicable time, plaintiff lost standing to bring her claim." 304 Mich. App. at 715. As the Sixth Circuit recognized in *Conlin*, *supra*, whether a post-redemption period challenge "is best classified as standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*, 714 F.3d at 359-60 (citing *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429-30 (6th Cir. 2013)) (footnotes omitted). *See also Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 495-96 (6th Cir. May 22, 2014) (holding that Michigan decisions discussing post-redemption challenges should not be read as Article III standing cases and holding that plaintiff had standing post-redemption under both Article III and Michigan law to continue to assert an ownership right in foreclosed property) (citing *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013) (citing *Mfrs. Hanover Mtg. Corp. v. Snell*, 142 Mich. App. 548 (1985)). Thus, regardless of how the challenge is characterized, there is universal agreement that the test for meeting it requires an extraordinarily strong showing of fraud or irregularity in the foreclosure process itself.

*IndyMac Mortg. Servs.*, 510 F. App'x. 425, 429–30 (6th Cir. Jan. 7, 2013)) (alteration in original). The fraud "must relate to the sheriff's sale itself, not to the underlying equities, if any, bearing on the instrument. . . ." *Bernard v. Fed. Nat'l Mtg. Ass'n*, 587 F. App'x 266, 269 (6th Cir. 2014) (internal quotation marks and citation omitted). The fraud, mistake or irregularity must pertain to the "technical" requirements of the statutory procedure itself. *See Freeman*, 241 Mich. App. at 637 ("Plaintiff cannot argue that there was fraud, accident, or mistake because plaintiff readily conceded that the foreclosure procedure was technically proper."). The alleged fraud or mistake must relate to "conducting the legal measures" required under the statutory scheme:

> Williams attempts to invoke the fraud or irregularity exception to extend the redemption period. In order to qualify for the exception and extend the redemption period, the fraud or irregularity must be in "conducting the legal measures." *Heimerdinger v. Heimerdinger*, 299 Mich. 149, 299 N.W. 844, 846 (1941). This requires that the fraud or irregularity be present in the foreclosure procedure itself. *Sagmani [v. Lending Assocs. LLC*, No. 302865,] 2012 WL 3193940, at *1 [(Mich. Ct. App. Aug. 7, 2012)] ("A party can challenge the foreclosure after the redemption period only if there is clear evidence of fraud or irregularity in the foreclosure proceedings."). However, Williams's claim of fraud relies on oral assurances during a negotiation to change the terms of the contract. Despite the fact that the negotiations may have taken place during the foreclosure process, these negotiations remained separate from the foreclosure process itself. As such, even if assumed to be true, Williams's allegations of fraud would not qualify him for the fraud exception because they are not fraud or irregularity in "the legal measures" of the foreclosure process.

*Williams v. Pledged Property II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012).

Moreover, even upon a showing of such fraud or irregularity, plaintiff must demonstrate actual prejudice as a result of the fraud or irregularity in order to proceed with a post-redemption claim. *Conlin*, 714 F.3d at 359-60. Prejudice can only be shown by demonstrating that Plaintiff "would have been in a better position to preserve his interest in the property absent defendant's non-compliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.,* 493 Mich. 98, 115-16 (2012).

10

Plaintiff must allege "a causal relationship between the alleged fraud or irregularity and the alleged prejudice." *Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 859 N.W.2d 238, 242 (Mich. Ct. App. 2014).

In this case, Plaintiff cannot establish that the alleged fraud or irregularity related to the foreclosure process itself, nor can he establish the type of prejudice required to set aside the sale of his property. Plaintiff claims prejudice in this case based upon his allegation that the Defendant refused Plaintiff's "tender of the full amount due [to reinstate his loan] and its insistence on the redemption amount."[3] ECF No. 24, Pl.'s Resp. 10. Plaintiff's claim that Defendant wrongfully refused to accept his reinstatement payment relates to and depends upon the mortgage contract between Plaintiff and Defendant; it does not relate to the statutory foreclosure procedures themselves. For example, Plaintiff does not claim that he lacked notice of the foreclosure sale or that the foreclosing party failed to post notices of adjournment of the sale or that some other

---

[3] It is unclear whether Plaintiff also claims that Defendant's failure to offer him a loan modification serves as a basis for his wrongful foreclosure claim but clearly it cannot. The sole remedy for an alleged violation of Mich. Comp. Laws § 600.3205 (Michigan's loan modification statute) is conversion of a *pending* foreclosure by advertisement proceeding to a judicial foreclosure. *Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 499 (6th Cir. 2014) (noting that the exclusive remedy for defendant's failure to comply with loan modification statute was to seek to convert the foreclosure proceeding to a judicial foreclosure and finding that plaintiff's failure to avail himself of that exclusive remedy while the foreclosure proceedings were ongoing barred his claim for relief and negated any claim of prejudice). *See also Block v. BAC Home Loans Servicing, L.P.*, 520 F. App'x 339, 340-41 (6th Cir. 2013) ("the remedy for breach of the loan-modification statute is to 'convert the foreclosure proceeding to a judicial foreclosure'"); *Smith v. Bank of America Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012) (recognizing that the foreclosure modification statute provides an exclusive remedy allowing a plaintiff to convert a foreclosure by advertisement to a judicial foreclosure and that once the foreclosure sale has occurred, this relief is no longer available); *Wargelin v. Bank of America*, *NA*, No. 12-15003, 2013 WL 5587817, at *17 (E.D. Mich. Oct. 10, 2013) (holding same). There are no pending foreclosure proceedings in this case and Plaintiff's only avenue of relief for such a violation is no longer available. *Ordway v. Bank of America, N.A.*, No. 13-13236, 2013WL 6163936, at *2 (E.D. Mich. Nov. 20, 2013).

procedural requirement of the foreclosure statute has not been met. *See Sweet Air Inv. v. Kenney*, 275 Mich. App. 492, 502 (2007). Plaintiff asserts what is in essence a breach of contract claim (which he has not pled) against Defendant for refusing to accept his reinstatement payment contrary to the terms of the Mortgage agreement, a claim that has nothing at all to do with an alleged failure to comply with the statutory requirements. "Even if [the Court] found plaintiffs' breach of contract claim meritorious, that would still not be a basis to set aside the foreclosure . . . [because] the mortgagor's claims of fraud, irregularity or mistake [sufficient to set aside the foreclosure] must relate to the sheriff's sale itself, not to the underlying equities, if any, bearing on the instrument." *Federal Home Loan Mortg. Corp. v. Gaines*, 589 F. App'x 314, 317 (6th Cir. 2014) (final alteration in original).

Even if Plaintiff could establish that he suffered a wrong that related to the Defendant's failure to comply with the Michigan foreclosure by advertisement statute, he has not alleged the type of the prejudice that would justify setting aside the completed foreclosure sale of his property, i.e. he does not allege that he stood ready to redeem the property himself and could have done so during the redemption period but for some identified alleged defect in the process attributable to the Defendant. To do this, Plaintiff, who (post-foreclosure) took no action until just days before the redemption period expired, would have to at least plausibly allege that he had the financial means to redeem the Property. *See Donkers v. Countrywide Home Loans, Inc.*, No. 270474, 2007 WL 2683755, at *3 (Mich. Ct. App. Sept. 13, 2007) (finding plaintiff's lengthy delay, inaction, and failure to offer evidence that she had a financial ability to redeem insufficient to create a factual issue of prejudice). He has not done so. While he alleges that he had the financial ability to pay $27,170.69 to reinstate his loan the day before it was sold at foreclosure, there is no suggestion that

12

he made any effort over the course of the next six months to redeem the property, and no suggestion that he was able to pay $169,125 required to redeem the Property six months later. Plaintiff has not alleged that he had the financial wherewithal to pay the redemption amount to reclaim his Property after it had been sold at foreclosure.   *See Conlin*, 714 F.3d at 361-62.[4]

Plaintiff is not entitled to the relief he seeks, *i.e.* setting aside the foreclosure sale of his home. In the State of Michigan, winning back your home after it has been sold at a foreclosure sale, and you have let the six-month redemption period lapse, is difficult. That is because the Michigan legislature expressly made it so. "Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. To effectuate this interest in finality, the ability for a court to set aside a

---

[4] At the hearing on the motion to dismiss, Plaintiff verbally resurrected a claim challenging the assignment of his mortgage. This claim lacks plausibility. Wells Fargo has demonstrated, relying on public records, a record chain of title (recording of both the original Mortgage and Assignment of the Mortgage to Wells Fargo) that gives it the right to foreclose on Plaintiff's loan.  Although Wells Fargo has produced a copy of the Note (endorsed in blank) there is no requirement that Wells Fargo, the long-acknowledged record title holder of Plaintiff's Mortgage (and also not unimportantly the entity from whom Plaintiff sought a loan modification), also possess the underlying Note in order to proceed with foreclosure by advertisement. *Residential Funding Co., L.L.C. v. Saurman*, 490 Mich. 909, 910 (2011). Plaintiff cannot challenge any aspect of the Assignment of his Mortgage because, as a nonparty to that assignment, he lacks standing to mount such a challenge absent a showing that he would be subject to double liability on his debt. *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). Plaintiff's late-breaking citation at the hearing to *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249 (6th Cir. 2014), does nothing to bolster his assignment challenge. Nothing in *Slorp* undermines the Sixth Circuit's underlying rationale for prohibiting the challenge in *Livonia Properties*, *i.e.* that a third party challenging an assignment must demonstrate prejudice in the form of a threat of double liability. *Slorp* may have clarified that circumstances can exist that would permit a third party to mount a challenge to an assignment of a mortgage – but those circumstances are not pled here.  No facts have been alleged in Plaintiff's First Amended Complaint or Proposed Second Amended Complaint which plausibly suggest a claim that Plaintiff faced double liability on his mortgage debt.

13

sheriff's sale has been drastically circumscribed." *Conlin*, 714 F.3d at 359.[5]  Even assuming the truth of the factual allegations of Plaintiff's proposed second amended complaint, such facts fail to plausibly suggest a claim for wrongful foreclosure.

## IV.     CONCLUSION

For the foregoing reasons the Court DENIES Plaintiff's motion for leave to file a second amended complaint and GRANTS Defendant's motion to dismiss Plaintiff's First Amended Complaint.

IT IS SO ORDERED.

                                                                                                s/Paul D. Borman                    
                                                                                                 PAUL D. BORMAN  
                                                                                                 UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2015

---

[5]  It is unclear whether Plaintiff continues to claim that paragraph 9(d) of the Mortgage, which precludes a foreclosure that is not otherwise authorized by the HUD regulations, entitles him to relief.  However, this argument is a clear non-starter and has been rejected by multiple courts, including this Court, that have been faced with such challenges based on identical contractual provisions, and have found both that no private right of action exists based on the HUD regulations and that any such claim would be barred by the preexisting duty rule.  *See Meyer v. Citimortgage, Inc.*. No. 11-13432, 2012 WL 511995, at *3 (E.D. Mich. Feb. 16, 2012) (noting that HUD regulations do not expressly or impliedly create a private right of action for mortgagors against mortgagees for noncompliance with HUD regulations); *Ashford v. Bank of America, N.A.*, No. 13-12153, 2013 WL 5913411, at *3-4 (E.D. Mich. Oct. 31, 2013) (holding that breach of contract claim cannot be premised on defendant's preexisting duty to comply with HUD regulations).  *See also Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 WL 4450502, at *4 (E.D. Mich. Sept. 25, 2012) and *Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, No. 10-13780, 2011 WL 4905533, at *8 (E.D. Mich. Oct. 14, 2011), *rev'd on other grounds*, 505 F. App'x 543 (6th Cir. 2012) (both holding same).

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 29, 2015.

                                                      s/Deborah Tofil
                                                      Case Manager